**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

HOMER MOONEY                                                    PLAINTIFF

V.                                    4:08CV00639 JMM

AT&T UMBRELLA BENEFIT PLAN #1                         DEFENDANT

**ORDER**

This case involves an ERISA claim for benefits under 29 U.S.C. Section 1132(a)(1)(B).

Plaintiff, Homer Mooney, was a participant in the SBC Disability Income Plan (the "Plan").

Effective January 1, 2007, the Plan became known as the AT&T Disability Income Program,

which is a Program under the AT&T Umbrella Benefit Plan No. 1.  AT&T serves as the Plan

Administrator.  Sedgwick Claims Management Services ("Sedgwick") is the Claim

Administrator.

In November 2005, Plaintiff was working for AT&T as a supply attendant.  His job

required "lifting, pushing up to 150 lbs., bending, squatting, loading and unloading trucks,

driving up to 400 miles per day."  (AR538).          During this time, Plaintiff suffered from a

series of physical problems including neck pain, headaches, carotid bruit, memory loss, left

facial pain with TMJ, low back pain, arthralgia, allergic rhinitis, anxiety disorder, depression,

muscle spasms, pain and parasthesis in the upper extremities, and sleep apnea.  (AR428-29).  His

physician, Dr. Charles Shultz, a neurologist, took Plaintiff off of work from December 2, 2005

until February 27, 2006 based upon his health.  Plaintiff took short term disability leave from

AT&T.

When Plaintiff returned to work in February 2006, Dr. Schultz placed him on restrictions

of no lifting greater than 25 pounds and no prolonged driving or standing.  (AR429, AR313).  On

August 28, 2006, Dr. Schultz changed Plaintiff's restrictions to allow him to lift up to 60 pounds. (AR175).  AT&T was able to accommodate Plaintiff's restrictions until September 22, 2006. Plaintiff then resumed short term disability benefits.  (AR010).

Plaintiff saw Dr. Schultz on November 29, 2006.  At that visit, Plaintiff's physical problems remained the same as documented in 2005.  Plaintiff's restrictions of light duty work with lifting up to 60 pounds and no prolonged driving or standing remained in place.  At Plaintiff's December 7, 2006 appointment with Dr. Schultz, Plaintiff was given restrictions of working no more than eight hours per day, no prolonged sitting, bending, squatting, kneeling, crawling, gripping, reaching, or climbing ladders.  (AR024-25).

On February 2, 2007, Sedgwick, the Claims Administrator for the Plan, ordered a review of Plaintiff's records.  Katherine Duvall, M.D., an Occupational Medicine Specialist, reviewed Plaintiff's records and agreed with the restrictions placed upon Plaintiff by Dr. Schultz. (AR032). However, AT&T did not have a position available to accommodate Plaintiff's restrictions.  (AR034).  Therefore, Plaintiff remained off work and continued to receive short term disability payments.

On March 30, 2007, Plaintiff again saw Dr. Schultz.  In his report, Dr. Schultz opined that Plaintiff was "unable to perform his job duties and [was] currently disabled."  (AR149).

On May 21, 2007, Sedgwick informed Plaintiff that his short term disability benefits would expire on September 27, 2007 and that he might be eligible for long term disability benefits at that time.  Accordingly, Plaintiff completed the application for long term disability benefits.  In response to Plaintiff's application, Sedgwick asked Barbara Parke, M.D., a Physical Medicine and Rehabilitation Specialist, to review Plaintiff's records and report her opinion of

Plaintiff's functional and vocational capacity.  (AR056).  Dr. Parke opined that as of June 6,

2007, Plaintiff had the ability to work with restrictions of lifting no more than 10 pounds, no

overhead work or climbing poles or ladders, no power gripping and no bending.  Dr. Parke

indicated that Plaintiff had the capacity to work a sedentary job.  Id.

Also in June 2007, Dr. Schultz became aware that Plaintiff had made a workers'

compensation claim.  Dr. Schultz discharged Plaintiff from his care stating that he did not see

workers' compensation patients.  (AR065).   As a result of not having a treating physician,

Plaintiff's eligibility for continued short term disability benefits was denied effective July 24,

2007.  Plaintiff's application for long term benefits was also denied based upon the fact that

Plaintiff had not exhausted his short term disability benefits.

Plaintiff ultimately sought treatment from another neurologist, David Oberlander, M.D.

Dr. Oberlander opined that Plaintiff's low back pain appeared to be "referable to a case of nerve

root irritation with documented pathology vis-a-vis degenerative changes in the low back."

(AR567).   He stated that he did not feel the Plaintiff could work at this point in time, although

more formal documentation was needed. Id.  Plaintiff appealed the denial of his short term

benefits and Sedgwick reversed its denial.  Plaintiff was paid for short term disability benefits

through September 27, 2007.  Because Plaintiff received his full short term disability benefits, he

was eligible for consideration for long term benefits.  (AR128).

In assessing Plaintiff's application for long term disability benefits, Sedgwick referred

Plaintiff's records to an independent neurologist, Arousiak Barpetian, M.D. on October 30, 2007.

Dr. Barpetian stated that except for an abnormal gait, which was related to low back pain, there

were no other abnormalities documented on Plaintiff's neurological exam.  (AR076).  Dr.

Barpetian opined that Plaintiff was not totally disabled and could perform sedentary to light work.

Sedgwick also referred Plaintiff's records to a pulmonologist, Leonard Sonne, M.D. to assess Plaintiff's sleep apnea.  Dr. Sonne opined that there was no documentation of any restrictions, limitations, or impairment cause by apnea that would preclude full time employment.  (AR077).

Finally, Sedgwick requested a Transferable Skill Assessment of Plaintiff by Jacqueline Mroszczak, a Job Accommodation Specialist.  Ms. Mroszczak noted that Plaintiff had a college degree in Management/Human Resources and that he had taken courses in computer programming, management information systems and telecommunications.  Based upon Plaintiff's education and previous work experience the examiner found that Plaintiff should have the ability to make decisions, communicate, operate a computer, sort, file, and have basic general office skills.  (AR515).  Ms. Mroszczak found several jobs which Plaintiff could perform with his restrictions including clerk, general clerk, shipping checker and human resources clerk.  Id.

Based upon findings of the physician specialists and the job accommodation specialist, Sedgwick upheld its earlier denial of Plaintiff's claim for long-term benefits and communicated its decision by letter dated December 10, 2007.  (AR590-91).

Plaintiff appealed the denial of his long term benefits on February 26, 2008.  In his appeal letter, Plaintiff stated that Sedgwick had based its decision on his abnormal gait related to low back pain.  Plaintiff stated that there were many other abnormalities that made him unemployable.  He listed his symptoms as lower and upper back pain, weak legs, hip pain, shoulder pain, neck pain, and limited use of his arms.  (AR607).  Plaintiff asked Sedgwick to

look over all of his medal reports from the past two years.  Plaintiff also included a January 7,

2008 office record from Dr. Oberlander.  However, Dr. Oberlander's notes did not include any

new information.

Sedgwick referred Plaintiff's medical records to another independent neurologist, Charles

Brock, M.D.  Dr. Brock tried to contact both Dr. Oberlander and Dr. Schultz to discuss

Plaintiff's condition but was unable to communicate with them.  Dr. Brock reviewed Plaintiff's

file including the records from Dr. Schultz and Dr. Oberlander and Plaintiff's EMG and MRI

reports.  Dr. Brock opined that Plaintiff was capable of sedentary job duties.  (AR621).

By letter dated April 11, 2008, Sedgwick upheld its decision to deny Plaintiff's long term

benefits.  The letter stated that "the medical information did not support [Plaintiff's] inability to

perform any occupation."  (AR739).  The letter explained that this was the final decision.  Two

months later, Plaintiff submitted additional medical  records to Sedgwick including medical

record dating back to 1993, Veterans Administration records and United States Office of

Personnel Management records.[1]  Sedgwick returned these additional records to Plaintiff and

reiterated that its April 11, 2008 decision had been final.  (AR712).

Plaintiff has exhausted his administrative remedies.  He filed suit in this Court against the

Defendant on July 29, 2008.  Both parties have filed Motions for Summary Judgment.

### Standard of Review

ERISA provides for judicial review of disability benefit denial decisions.  The Supreme

Court has recognized that a deferential standard of review is appropriate under 29 U.S.C. §

---

[1] Prior to working for AT&T, Plaintiff had worked for the U.S. Postal Service but had taken disability retirement "due to degenerative disc disease and arthritic changes involving both his cervical spine and low back area."  (AR673-74).

1132(a)(1)(B), if "the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The Plan provides that the "Plan Administrator (or, in

matters delegated to third parties, the third-party that has been so delegated) shall have sole

discretion to interpret the Program, including but not limited to interpretation of the terms of the

Program, determinations of coverage and eligibility for benefits, and determination of all

relevant factual matters."  The Plan further states, "Sedgwick Claims Management Services, Inc.

(the AT&T Integrated Disability Service Center) has been delegated authority by the Plan

Administrator to determine whether a particular Eligible Employee who has filed a claim for

benefits is entitled to benefits under the Program.  This includes the authority to determine

claims and appeals on these matters."  Id.  In other words, the Plan gives discretion to AT&T and

its third-party delegate.  AT&T delegated its authority over claim administration to Sedgwick.

Therefore, the decisions of Sedgwick are subject to review for abuse of discretion by this Court.

*King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994 (8th Cir. 2005).

     Plaintiff makes a brief argument that the Defendant had a conflict of interest in this case.

He contends that it is a conflict of interest for a Plan Administrator to advise a plan participant to

file for Social Security disability benefits and then deny the participant's claim for disability

benefits.  The Plaintiff then goes on to state that Plaintiff had been awarded Office of Personnel

Management ("OPM") disability retirement.  However, Plaintiff was awarded OPM benefits

prior to filing for short term or long term disability benefits.  The Court finds no conflict of

interest based upon these facts.

     Plaintiff also claims that the Defendant has a conflict of interest because it is "responsible

for both the administering and paying out of benefits."  The Eighth Circuit has stated, "As a general matter, when the insurer is also the plan administrator, we have recognized something akin to a rebuttable presumption of a palpable conflict of interest." *See Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 587-88 (8th Cir. 1999).  Indicia of bias can be negated by ameliorating circumstances, such as an equally compelling long- term business concern that militates against improperly denying benefits despite the dual role or a situation where the insurer/administrator is a non-profit entity that does not have a direct profit motive in denying claims.  *See Farley v. Arkansas Blue Cross & Blue Shield,* 147 F.3d 774, 777 (8th Cir.1998)); *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 947 -948 (8th Cir. 2000).  However, according to the Plan, Sedgwick has the responsibility for administering the disability claims, not the Defendant.

Even if a Plaintiff can show conflict of interest, the conflict must have caused a serious breach of the Defendant's fiduciary duty.  "The alleged breach must be significant to trigger a less deferential review.  This second prong presents a considerable hurdle for plaintiffs." *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 948 (8th Cir.2000) (quoting *Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 588 n. 9 (8th Cir.1999)).

In this case, there is no evidence that the Defendant committed a serious breach of its fiduciary duty.  The only complaint in the Defendant's handling of the claim is that the claim was denied.  Sedgwick was prompt, conducted a reasonable review of the facts, and provided Plaintiff with a detailed and understandable explanation of the reasons the claim was denied. Because there is no evidence of a breach of fiduciary duty by the Plan or Sedgwick, the Court finds that the deferential standard of review is appropriate in this case.

In applying an abuse of discretion standard, the reviewing Court must affirm if a

"reasonable person *could* have reached a similar decision, given the evidence before him, not

that a reasonable person *would* have reached that decision." *Ferrari v. Teachers Ins. and*

*Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002).  A reasonable decision is one based on

substantial evidence that was actually before the plan administrator.  Substantial evidence is

defined as "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins.*

*Co.*, 220 F.3d 944, 949 (8th Cir. 2000).  A reviewing court may consider both the quantity and the

quality of evidence before a plan administrator.

The Court finds that the record supports the denial of benefits in this case.  At the time

Plaintiff applied for long term disability benefits he was under the care of Dr. Oberlander.  Dr.

Oberlander saw Plaintiff on October 4, 2007.  (AR565).  In his notes he stated that Plaintiff was

in a great deal of pain.  He stated, "I do not see him working at this point in time and I am

formally keeping him off work from my standpoint. . . ."  (AR565).  Dr. Oberlander's notes from

Plaintiff's next visit on January 7, 2008 are almost identical.  Again, he stated, "I do not see him

working at this point in time and I am formally keeping him off work from my standpoint. . . ."

(AR610).  Significant, however, is the lack of objective testing done by Dr. Oberlander.

While not discounting Plaintiff's pain, Sedgwick's independent neurologist, Dr.

Barpetian opined that Plaintiff was not totally disabled and could perform sedentary to light

work.  Dr. Barpetian noted that there were no neurological abnormalities documented on

Plaintiff's records except an abnormal gait related to low back pain.  Dr. Sonne, a pulmonologist,

found that Plaintiff's sleep apnea would not preclude Plaintiff's employment as there were no

documented restrictions, limitations or impairments caused by the apnea.  Dr. Brock, an

independent neurologist, also concluded from Plaintiff's medical records that Plaintiff could

perform a sedentary job.  Further, Sedgwick requested a Transferable Skill Assessment which

found that Plaintiff had the skills and ability, even with his limitations, to perform other jobs.

Plaintiff also argues that Sedgwick did not consider the OPM's decision to award

Plaintiff disability benefits and that the failure results in an arbitrary and capricious decision by

the Defendant.  However, the administrative record shows that Sedgwick was not provided with

the OPM records until after the appeals process was complete and a final decision had been

made by Sedgwick.  (AR712).  Plaintiff's attorney admits that "for reasons that are not entirely

clear these records were not submitted to the ERISA committee when it rendered its first

decision and its second decision on April 11, 2008."  Id.

While it is apparent from the record that Plaintiff suffers from chronic pain, there is

simply not enough evidence in the administrative record to support a finding that he is disabled

from all occupations.  Plaintiff was given an opportunity to respond to Sedgwick's physician

reports.  Plaintiff was given a full and fair review of his claim.  However, his medical

documentation did not substantiate his disability and three physicians found that Plaintiff did not

meet the definition of disabled under the policy.  The Eighth Circuit has held that "a plan

administrator has discretion to deny benefits based upon its acceptance of the opinions of

reviewing physicians over the conflicting opinions of the claimant's treating physicians unless

the record does not support the denial." *Dillard's Inc. v. Liberty Life Assur. Co. of Boston,* 456

F.3d 894, 899 -900 (8th Cir. 2006).  It is well settled that "when a conflict in medical opinions

exists, the plan administrator does not abuse his discretion by adopting one opinion, if

reasonable, and finding that the employee is not disabled." *Smith v. UNUM Life Ins. Co. Of

America*, 305 F.3d 789, 794 (8th Cir. 2002).  The record supports Sedgwick's denial of Plaintiff's

disability benefits.

For these reasons, the Plaintiff's Motion for Summary Judgment (Docket # 23) is

DENIED and the Defendant's Motion for Summary Judgment (Docket # 26) is GRANTED.  The

Clerk is directed to close the case.

IT IS SO ORDERED this 25th day of March 2009.

_____
James M. Moody
United States District Judge